**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HOLLISTER INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 6431 |
| ) | |
| CONVATEC INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Hollister Incorporated has sued ConvaTec Inc., alleging that ConvaTec's Flexi-Seal® Fecal Management System and Flexi-Seal® Signal™ Fecal Management System products infringe a patent Hollister acquired from Zassi Medical Evolutions, Inc. ConvaTec has moved for summary judgment. For the reasons stated below, the Court grants the motion.

## Background

Hollister's claims in this case concern a patent for a bowel management system, U.S. Patent No. 7,722,583 (the '583 patent), the rights to which Hollister acquired from Zassi in September 2006. Zassi applied for the '583 patent in April 2006, and the patent was issued in May 2010. Zassi filed the application as a divisional application, claiming priority to a patent application Zassi had filed in August 2002. That earlier application resulted in the issuance of U.S. Patent No. 7,147,627 (the '627 patent), in December 2006. For the sake of convenience, the Court will refer to the application

that led to the '627 patent as the '627 patent application and the application that led to the '583 patent as the '583 patent application – even though the applications, of course, had different numbers.

On October 6, 2005, Zassi and ConvaTec executed a "Settlement and Release Agreement" regarding their respective bowel management system and ostomy care products. The recitals of the settlement agreement included the following:

> WHEREAS, CONVATEC and ZASSI are parties to the Development and License Agreement of October 29, 1999 (the "COP Agreement") for the worldwide development and distribution of certain ostomy care products, including a Continent Ostomy Port ("COP"), and to the Supply Agreement of August 7, 2001 (the "Supply Agreement") pertaining to the manufacturing and supply of products consistent with their prior undertakings under the COP Agreement; and,
>
> WHEREAS, pursuant to the terms of the COP Agreement, CONVATEC and ZASSI provided, shared or exchanged information or know-how pertaining to COP and related technology; and,
> . . . .
>
> WHEREAS, prior to and during 2002, CONVATEC and ZASSI provided, shared or exchanged information or know-how related to Bowel Management System (hereinafter "Bowel Management System"); and,
> . . . .
>
> WHEREAS, ZASSI engaged in activities directed to the design and development of Bowel Management System(s), and in 2003 commercially launched its ZASSI Bowel Management System™ product; and,
>
> WHEREAS, CONVATEC engaged in activities directed to the design and development of Fecal Management System(s) ("FMS"), and in 2004 commercially launched its Flexi-Seal® FMS product; and,
>
> WHEREAS, disputes have arisen between CONVATEC and ZASSI regarding the COP Agreement, Bowel Management System, FMS and information or know-how provided, shared or exchanged between the Parties prior to the Effective Date;
>
> WHEREAS, the Parties desire to settle and resolve all existing and potential disputes, actions, lawsuits, charges and claims that they may have against each

other related to the COP Agreement, Bowel Management System, FMS or information or know-how provided, shared or exchanged prior to the Effective Date, to the fullest extent permitted by the law, . . . ; and,
. . . .

WHEREAS, it is the intention of the Parties hereto that CONVATEC will be permitted to continue manufacturing, offering for sale and selling worldwide the present or past commercially available Flexi-Seal® FMS product, a sample of which CONVATEC has designated as "Exhibit A" and has provided to ZASSI, . . . . pursuant to the release granted in Paragraph 10 set forth below; . . . .

ConvaTec LR 56.1 Stat., Ex. 9, at 1-2.

The settlement agreement provided that:

10. ZASSI hereby fully and forever releases, acquits, and discharges CONVATEC . . . from any and all past, present or future claims (including, without limitation, claims for patent infringement or misappropriation and/or misuse of confidential information), to the extent such claims relate in any manner or degree to CONVATEC's present or past commercially available FMS design, currently marketed by CONVATEC as the Flexi-Seal® FMS product, a sample of which CONVATEC has designated as "Exhibit A" and has provided to ZASSI, as set forth in the letter attached hereto as Exhibit A of this Settlement Agreement.
. . . .

12. Each of the Parties expressly understand that nothing in this Settlement Agreement will be construed to: (i) release the other Party from existing or future parent patent infringement claims directed to new features or subject matter which are not present in CONVATEC's present or past commercially available FMS design as described in Paragraph 10, or ZASSI's present or past commercially available Zassi Bowel Management System design as described in Paragraph 11, respectively; . . .
. . . .

28. The releases granted pursuant to Paragraphs 6-11 of this Settlement Agreement shall be full and final releases by which each Party waives all rights or benefits which that Party may now have or in the future may have under the terms of any statute or provision of law. The Parties understand and accept the risk that they may have substantial claims, liabilities, damages, actions and causes of action relating to the releases set forth in Paragraphs 6-11 that have not yet been manifested or are presently unknown, or that have not yet been identified and the Parties nevertheless intend to and do deliberately release these possible future claims, liabilities, damages, actions and causes of action.

*Id.* at 4-5, 9-10. At the time the parties executed the agreement, Zassi had filed the '627 parent patent application but had not yet filed the '583 patent application.

As required by the settlement agreement, Zassi and ConvaTec simultaneously executed a "Patent and Know-How Cross-License Agreement." In the cross-license agreement, Zassi licensed to ConvaTec nine issued patents and thirty-four pending patent applications relating to ostomy care technology. None of the patents or applications licensed in the cross-license agreement related to bowel management system technology. The cross-license agreement did not reference the '627 patent application.

In September 2006, Zassi assigned the rights to the '627 and '538 patent applications, "including the subject matter of all claims that may be obtained therefrom," to Hollister via an asset purchase agreement. Hollister alleges that ConvaTec's Flexi-Seal® Fecal Management System and Flexi-Seal® Signal™ Fecal Management System products infringe at least one claim of the '583 patent. ConvaTec has moved for summary judgment.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is improper 'if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

ConvaTec first argues that the settlement agreement releases it from patent infringement claims by Hollister relating to ConvaTec's Flexi-Seal® and Flexi-Seal® Signal™ products. Hollister does not dispute that, as assignee of Zassi's rights to the '583 patent, it is bound by the terms of the settlement agreement if they apply. Hollister counters, however, that (1) the use of the term "release" in the settlement agreement confirms that Zassi and ConvaTec did not intend for the agreement to apply to future claims, (2) a release cannot discharge claims for infringement of an unissued patent, and (3) a factual dispute exists regarding Zassi's and ConvaTec's intent regarding the release.

## I.  Settlement agreement terms

The parties agree that this Court must interpret the settlement agreement, by its terms, in accordance with New Jersey law. Under New Jersey law, the polestar of contract interpretation is the intention of the parties as revealed by the language used. *Conway v. 287 Corp. Ctr. Assocs.*, 187 N.J. 259, 269, 901 A.2d 341, 347 (2006).

The Court therefore looks to the language of the settlement agreement to discern Zassi and ConvaTec's intent. Paragraph 10 of the agreement states as follows:

> ZASSI hereby fully and forever releases, acquits, and discharges CONVATEC . . . . from any and all past, present or future claims (including, without limitation, claims for patent infringement or misappropriation and/or misuse of confidential information), to the extent such claims relate in any manner or degree to CONVATEC's present or past commercially available FMS design, currently marketed by CONVATEC as the Flexi-Seal® FMS product, a sample of which CONVATEC has designated as "Exhibit A" and has provided to ZASSI . . . .

ConvaTec LR 56.1 Stat., Ex. 9, at 4-5. Hollister does not dispute that the Flexi-Seal® and Flexi-Seal® Signal™ products at issue in this infringement suit have the same product design as the Flexi-Seal® product identified in the settlement agreement. Paragraph 10 therefore indicates that Zassi and ConvaTec intended to release ConvaTec from patent infringement claims such as Hollister's.

Paragraph 12 of the Settlement agreement reinforces this conclusion. It states:

> Each of the Parties expressly understand that nothing in this Settlement Agreement will be construed to: (i) release the other Party from existing or future parent patent infringement claims directed to *new features or subject matter which are not present* in CONVATEC's present or past commercially available FMS design as described in Paragraph 10 . . . .

*Id.* at 5 (emphasis added). By excluding patent infringement claims directed at new features from the scope of paragraph 10, paragraph 12 reaffirms that the parties intended to release ConvaTec from all claims that relate to past versions of the product design.

The recitals of the settlement agreement also reinforce that Zassi and ConvaTec intended to release ConvaTec from patent infringement claims relating to its Flexi-Seal® product. The recitals state, in relevant part, that:

> [I]t is the intention of the Parties hereto that CONVATEC will be permitted to continue manufacturing, offering for sale and selling worldwide the present or past commercially available Flexi-Seal® FMS product, a sample of which CONVATEC has designated as "Exhibit A" and has provided to ZASSI . . . .

6

*Id.* at 2.  Contrary to Hollister's argument, the recitals do not constitute inadmissible hearsay.  *See, e.g.*, *Schindler v. Seiler*, 474 F.3d 1008, 1010-11 (7th Cir. 2007) ("Statements that constitute verbal acts (e.g., words of contract . . . ) are not hearsay because they are not offered for their truth."); *see also* Fed. R. Evid. 801(c) advisory committee's note (stating that the Rule 801(c) excludes from the definition of hearsay "'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.").

Based on the plain language of the settlement agreement, the Court concludes that Zassi and ConvaTec intended to release ConvaTec from patent infringement claims relating to its Flexi-Seal® and Flexi-Seal® Signal™ products.

## II.     Hollister's arguments

In response, Hollister cites Zassi and ConvaTec's use of the term "release" rather than "covenant not to sue" in paragraph 10 of the settlement agreement. Hollister argues that a "release" under New Jersey law does not discharge future claims and thus that Zassi and ConvaTec did not intend for paragraph 10 to apply to future claims.  In support, Hollister cites *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44 (3d Cir. 2001), for the proposition that:

> A release is a provision that intends a present abandonment of a known right or claim.  By contrast, "a covenant not to sue also applies to future claims and constitutes an agreement to exercise forbearance from asserting any claim which either exists or which may accrue . . . . "

*Id.* at 56 (quoting *McMahan & Co. v. Bass*, 673 N.Y.S.2d 19, 21, 250 A.D.2d 460, 461 (1998)).

Hollister provides no authority, however, suggesting that New Jersey courts

7

make the same distinction between a release and a covenant not to sue as the New York case cited in *Medtronic*. In fact, in both *Breen v. Peck* and *Tino v. Stout*, the New Jersey Supreme Court characterized the distinction between a "release" and a "covenant not to sue" as concerning instead whether an agreement with one joint tortfeasor discharges other tortfeasors. *See Breen v. Peck*, 28 N.J. 351, 357-59, 146 A.2d 665, 667-69 (1958); *Tino v. Stout*, 49 N.J. 289, 297, 229 A.2d 793, 797 (1967).[1] Neither decision addressed the distinction the Third Circuit identified in *Medtronic*. Moreover, courts applying New Jersey law have likewise construed releases applying to future claims without discussing the distinction identified in *Medtronic*. *See Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 308, 315 (D.N.J. 1997) (enforcing release for future claims); *see also F.P.P.E. Consulting Eng'rs, Inc. v. Morda*, No. L-234-06, 2009 WL 454364, at *5 (N.J. Super. App. Div. Feb. 25, 2009) (unpublished) (directing lower court to determine, on remand, whether parties intended to release future claims).

The sole cited by Hollister for a contrary proposition is inapposite. In *Becker v. Sherwin Williams*, 717 F. Supp. 288 (D.N.J. 1989), a federal district court in New Jersey indeed held that a release did not apply to future claims. *Id.* at 293. The court did not attribute its holding to any limitation on the scope of a "release" under New Jersey law, however. Instead, it observed that the release at issue applied by its terms only to "claims which plaintiff had against [defendant] as of [the settlement agreement execution] date." *Id.* *Becker* therefore fails to support Hollister's argument.

---

[1] The New Jersey Supreme Court then proceeded to "abandon[] [that distinction] in favor of [a] rule which makes the intention of the parties the determining factor." *Tino*, 49 N.J. at 297, 229 A.2d at 797.

Moreover, it is crystal clear from the terms of the settlement agreement that Zassi and ConvaTec intended to release Zassi from future claims of patent infringement. The release in paragraph 10 applies to "any and all past, present or *future* claims." ConvaTec LR 56.1 Stat., Ex. 9, at 4 (emphasis added). Paragraph 28 similarly states:

> The releases granted pursuant to Paragraphs 6-11 of this Settlement Agreement shall be full and final releases by which each Party waives all rights or benefits which that Party may now have *or in the future may have* under the terms of any statute or provision of law. The Parties understand and accept the risk that they may have substantial claims, liabilities, damages, actions and causes of action relating to the releases set forth in Paragraphs 6-11 that have not yet been manifested or are presently unknown, or that have not yet been identified and the Parties nevertheless intend to and do deliberately release these possible *future claims*, liabilities, damages, actions and causes of action.

*Id.* at 9-10 (emphasis added).

Hollister next argues that a release cannot discharge claims for infringement of an unissued patent. When Zassi and ConvaTec executed the settlement agreement in 2005, the Patent and Trademark Office had not yet issued either the '627 patent or the '583 patent. As ConvaTec points out, however, Hollister cites no caselaw suggesting that a patentee must wait until a patent issues before releasing claims for future infringement of the patent. The case Hollister relies on, *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574 (Fed. Cir. 1991), holds merely that a patent holder may not sue on a patent until it issues. *See id.* at 1578-79. *Arachnid* thus does not support Hollister's argument.

Finally, Hollister argues that a factual dispute exists regarding Zassi and ConvaTec's intent regarding the release in paragraph 10. Specifically, it contends that

9

(a) the cross-license agreement between Zassi and ConvaTec, (b) an April 2006 e-mail from Zassi to Hollister, and (c) additional representations by Zassi to Hollister establish a genuine issue of material fact regarding whether the parties intended for the release to apply to future claims. The Court addresses each argument in turn.

## A. Cross-license agreement

Hollister contends that the cross-license agreement establishes a genuine fact dispute regarding Zassi and ConvaTec's intent to release ConvaTec from future patent infringement claims in the settlement agreement. In the cross-license agreement, Zassi provided ConvaTec with a license to use and a covenant not to sue concerning certain ostomy-related patents and patent applications. Hollister argues that Zassi and ConvaTec's failure to reach a similar agreement regarding Zassi's bowel management system patents and patent applications demonstrates that ConvaTec deliberately limited its rights in the settlement agreement to a release of existing claims relating to bowel management system technology.

The Court disagrees. First, Hollister's argument is contradicted by the repeated references in the settlement agreement to "future claims," including the reference in the paragraph 10 release at issue here. Second, the fact that Zassi and ConvaTec treated bowel management system and ostomy care products differently in the settlement and cross-license agreements in no way supports Hollister's argument that Zassi and ConvaTec intended to limit the paragraph 10 release in the settlement agreement to existing claims. To be sure, Zassi and ConvaTec phrased the paragraph 10 release broadly in terms of bowel management system technology but identified specific ostomy care patents and patent applications in the cross-license agreement. That fact,

however, does not support the inference that Zassi and ConvaTec intended to limit the paragraph 10 release to existing claims.

### B. Zassi e-mail

Hollister also cites an e-mail purportedly sent from Zassi to Hollister in April 2006 representing that the only licenses Zassi had granted to ConvaTec under any issued patents were for its ostomy care technology. Hollister cites the e-mail as evidence that Zassi did not intend for the settlement agreement to release ConvaTec from future patent infringement claims relating to bowel management system products.

As a preliminary matter, the e-mail may not have been properly authenticated. Though Hollister employee Ronald Geimer states that the e-mail is "Zassi's response to an email from Hollister's John Swanson dated April 21, 2006," Geimer fails to identify the sender or the recipient of the e-mail and omits the e-mail's heading.

More importantly, however, the e-mail responds to an inquiry about the existence of "any licenses granted under any of the *issued* Zassi patents." *See* Hollister's LR 56.1 Stat., Ex. 2 (emphasis added). In April 2006, the Patent and Trademark Office had not yet issued the '583 patent nor its parent, the '627 patent. Zassi's failure to mention any licenses granted relating to the later-issued '583 or '627 bowel management system patents therefore does not establish a genuine issue of material fact.

### C. Zassi's remaining representations to Hollister

Finally, Hollister cites additional representations by Zassi that its bowel management system patents were unencumbered. Based on these representations, Hollister suggests that Zassi must have not have intended its settlement agreement

11

with ConvaTec to release Zassi's rights under the '583 or '627 patents or patent applications.

The representations are as follows. First, in the asset purchase agreement in which Hollister purchased the rights to Zassi's bowel management system patent applications, Zassi stated:

> With respect to each item of Acquired Intellectual Property [defined to include the '627 and '583 patent applications] . . . such item is free and clear of any Security Interest, license, or other restriction to which any Person comprising Seller is a party;
> . . . .
>
> Seller has taken all reasonable actions to maintain and protect all of the Acquired Intellectual Property and will continue to maintain and protect all of the Acquired Intellectual Property prior to the Closing so as not to adversely affect the validity or enforceability thereof.

Hollister's LR 56.1 Stat., Ex. 3, at 15-16. Second, Zassi represented to Hollister in an "Assignment Between Organizations" that it was "the sole and exclusive owner of the entire right, title and interest in, to and under" various patents and patent applications including the '583 and '627 patent applications. ConvaTec LR 56.1 Stat., Ex. 5, at 1.

These representations do not establish a genuine fact issue regarding Zassi and ConvaTec's intent in executing the paragraph 10 release in the settlement agreement. First, the language in the settlement agreement flatly contradicts Zassi's assertions. Second, Zassi's representation to Hollister in the asset purchase agreement that the "Acquired Intellectual Property" was "free and clear of any Security Interest, license, or other restriction" also applied to nine patents and patent applications expressly licensed to ConvaTec in the cross-license agreement. *Compare* ConvaTec Reply in Support of Mot. for Summ. J., Ex. C, *and* Hollister LR 56.1 Stat., Ex. 1, Schedule B, at 3. Given

12

this context, no jury reasonably could find based on these representations that Zassi intended for the release in paragraph 10 of the settlement agreement to exclude the bowel management system claims at issue in this case.

Because the Court concludes that the settlement agreement released ConvaTec from patent infringement claims by Hollister relating to ConvaTec's Flexi-Seal® and Flexi-Seal® Signal™ products, it need not address ConvaTec's argument that the settlement agreement impliedly licensed the '627 and '583 patent's technology to ConvaTec.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment [34] and directs the Clerk to enter judgment in favor of defendant. The Court also terminates plaintiff's motion to seal [46], upon which the Court previously ruled.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 21, 2011